UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

SEP 10 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

ALAN S. TAYLOR,                          )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )    Case No. 1:11-cv-01247 (LO/IDD)
                                         )
THE MITRE CORPORATION,                   )
                                         )
        Defendant.                       )
_____)

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Sanctions against Plaintiff based on Plaintiff's alleged spoliation of evidence. (Dkt. No. 55.) This motion has been briefed *ad nauseam*,[1] thousands of pages of exhibits have been submitted, an evidentiary hearing was held on July 13, 2012, and argument on the motion was heard on August 17, 2012. At the conclusion of the August 17 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon carefully considering the voluminous record and all arguments presented, the undersigned recommends that Defendant's motion be GRANTED in part and DENIED in part.

## I.    INTRODUCTION

On November 15, 2011, Alan Taylor ("Plaintiff") filed a Complaint against the Mitre Corporation ("Defendant") seeking relief based on claims for violations of the Americans with

---

[1] The briefing on this motion includes Defendant's Memorandum in Support (Dkt. No. 56), Plaintiff's Memorandum in Opposition (Dkt. No. 64), Defendant's Reply (Dkt. No. 68), Plaintiff's Supplemental Memorandum in Opposition (Dkt. No. 71), Defendant's Supplemental Memorandum in Support (Dkt. No. 72), and Plaintiff's Second Supplemental Memorandum in Opposition to Defendant's Request for Sanctions (Dkt. No. 90). In addition to the instant motion, Defendant filed a Motion for In Camera Inspection of Attorney-Client Communications to Determine Applicability of Crime/Fraud Exception (Dkt. No. 74), to which the parties filed a Memorandum in Support (Dkt. No. 75), a Memorandum in Opposition (Dkt. No. 78), and a Reply (Dkt. No. 79). In total, the parties have submitted briefs in excess of 160 pages relevant to the resolution of the pending motion for sanctions.

1

Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). During the discovery phase of this case, Defendant acquired information that led it to believe that Plaintiff was engaging in litigation misconduct, namely, spoliation. After conducting a forensic examination of Plaintiff's computer, Defendant filed the instant motion, seeking sanctions for Plaintiff's alleged spoliation of evidence. Specifically, Defendant seeks dismissal of all of Plaintiff's claims with prejudice, attorney's fees and costs, and monetary sanctions.

## II.    FINDINGS OF FACT

As the trier of fact, this Court must consider all of the evidence relating to Defendant's Motion for Sanctions to determine whether it has met its burden of proof to establish that Plaintiff has committed spoliation of evidence. In doing so, this Court has the discretion to determine the credibility of the witnesses and to weigh their testimony, and the reasonable inferences drawn therefrom. *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979) (explaining that issues of witness credibility are best determined by the trier of fact who has observed the demeanor of the witnesses during direct and cross-examination). After convening an evidentiary hearing on July 13, 2012, reviewing the briefs and exhibits submitted thereto, as well as examining the relevant portions of the underlying record, the undersigned Magistrate Judge makes the following findings of fact.

### A.  Pre-litigation Background

On August 12, 1996, Defendant hired Plaintiff as a Senior Multi-Discipline Systems Engineer. (Dkt. No. 56 at 3.) Plaintiff is well versed in computer technology. He has twenty-five years "experience in both general systems engineering, data systems engineering, and security engineering." (June 13 Hr'g Tr. ("Hr'g Tr.") at 61:12-14.) He also testified that he was "proficient of hundreds of applications, to include Microsoft Office." (Hr'g Tr. at 61:21-22.)

On November 6, 2009, Plaintiff retained The Employment Law Group ("TELG") concerning his anticipated claims against Defendant. (Decl. of Connie N. Bertram ("Bertram Decl."), Ex. A (TELG Mem. Signed by Pl.).)   When Plaintiff retained TELG, TELG advised Plaintiff in a letter that he "<u>must</u> preserve all paper and electronic documents, email, and computer files related to [his] claim." (*Id.* (emphasis in original).)   The letter warned Plaintiff that "[d]eleting (or attempting to delete) electronic documents, email, or files, or discarding paper documents containing information related to your claims, can result in sanctions for spoliation of evidence and may result in dismissal of your claim." (*Id.*)   Plaintiff maintained his relationship with TELG through August 29, 2010, when Plaintiff e-mailed TELG saying, "We will shortly sever our legal relationship, but my fight will go on through the EEOC, OCCFP, and VA to try to hold my employer accountable." (Hr'g Tr. 159:23-160:20; Hr'g Def.'s Ex. 17.)   Plaintiff stated, "My wife and I are ready to give up everything to see this through" and that "Doing nothing, for me is not an option." (*Id.*)   An e-mail between Plaintiff and his daughter demonstrates that Plaintiff met with current counsel on September 13, 2010.   (Third Decl. of Meredith M. Snyder ("3d Snyder Decl.") ¶ 10, Ex. A ("Just got back from the new attorney . . . Mr. Stephen Kahn.").)

During his employment with Defendant, Plaintiff used a HP desktop computer for both personal and work use. (Betram Decl., Ex. E, Pl. Dep. at 287:24-288.)   During the course of his employment, Plaintiff saved "important" e-mails from TELG on the HP desktop. (*Id.* at 302:8-15.)   However, in 2011,[2] Plaintiff "wiped [the HP desktop] and then took a sledge hammer to it"

---

[2] The specific date that Plaintiff ceased using the HP desktop is not entirely clear, as Plaintiff claims that it died sometime in either 2010 or 2011, and his wife stated that it died in 2011. (Bertram Decl., Ex. P, Dep. of Judith Taylor at 99:9-100:10.) However, the specific date that the HP desktop was destroyed and/or died is immaterial to the resolution of this motion.

before disposing of it in the local landfill.[3]  (*Id.* at 289: 5-11.)  Although Plaintiff attempted to back up the desktop onto an external hard drive, he claims that he was only successful in recovering "about 30 to 40 percent of the documents that were on there."[4]  (Hr'g Tr. at 76:1-10.) Nevertheless, most of the contents of the desktop were lost, with the exception of Plaintiff's "wife's medical case and her disability and OWCP paperwork."  (*Id.* at 76:22-24.)  Still, Plaintiff avers that the recovered documents were transferred onto his new Dell laptop computer prior to his destroying both the external hard drive and HP desktop.[5]  (Bertram Decl., Ex. E, Pl. Dep. at 353:9-25.)

Plaintiff acquired the Dell laptop sometime in 2011, which became the primary computer for Plaintiff and his wife.[6]  (*Id.* at 286:6-12.)  On July 9, 2011, Plaintiff installed CCleaner[7] on the Dell laptop.  (Decl. of Christopher Racich ("Racich Decl.") ¶ 12.)  Plaintiff asserts that he had CCleaner installed on the laptop to "clean up the registry and temp files."  (Bertram Decl., Ex. E, Pl. Dep. at 294:12-14.)  Aside from installing and running CCleaner on his Dell laptop, Plaintiff had also installed and run CCleaner on his HP desktop prior to destroying it.  (*Id.* at 295:2-12.)

---

[3] During Plaintiff's deposition, Plaintiff admitted that he took a sledgehammer to the HP desktop.  However, at the evidentiary hearing, Plaintiff testified that he "was incorrect" at his deposition, stating that he instead took only a "regular hammer" to the HP desktop and "hit it three or four times."  (Hr'g Tr. at 82:7-19; 84:16-17.)  The undersigned finds Plaintiff's hearing testimony on this fact to be incredible.  Either way, Plaintiff admits that he destroyed his HP desktop.

[4] In his deposition, Plaintiff testified that the attempted back up of the HP desktop "was only like 30 – 30 percent, 20 percent, 30 percent successful.  So I lost most of it."  (Bertram Decl., Ex. E, Pl. Dep. at 289:17-21.)

[5] Plaintiff at one point asserted that he had "backup tapes" from the HP desktop computer, which he later identified as backup disks that were maintained by Dell.  (Hr'g Tr. at 131:19-25.)  These backup disks have never been produced.

[6] While both Plaintiff and his wife used the computer, Plaintiff has not asserted that any alleged spoliation activities were acts of his wife; rather, Plaintiff testified that he kept the laptop "upstairs most of the time because [he] was the one doing most of the work."  (Hr'g Tr. at 144:12-13.)

[7] CCleaner is a program "for cleaning your Windows PC.  It protects your privacy online and makes your computer faster and more secure."  Piriform, CCleaner, http://www.piriform.com/ccleaner (last visited Sept. 4, 2012).

On November 18, 2010, Plaintiff filed a charge of discrimination with the Fairfax County Human Rights Commission and the Equal Employment Opportunity Commission (EEOC). (Dkt. No. 56 at 4.) On September 1, 2011, Plaintiff received from the EEOC a notice of right to sue on his ADA claims. (Dkt. No. 1 at 13.)

## B. Post-filing Conduct

On November 15, 2011, Plaintiff filed a Complaint against Defendant seeking relief based on claims for violations of the ADA and the FMLA. (Dkt. No. 1.)

On June 1, 2012, this Court ordered Plaintiff to submit to a computer inspection by the close of business on June 7, 2012. (Dkt. No. 41, June 1 Hr'g Tr. at 22:22-25.) E-mails between Plaintiff and his counsel illustrate Plaintiff's frustration with the Court's consideration of a mandatory computer inspection. For example, on May 30, 2012, in an e-mail to counsel, Plaintiff said, "As a computer expert very familiar with forensic examinations, I find this overly invasive and unwarranted" and that he and his wife would "not submit to a voluntary submission of [their] electronic devices without a court order." (Dkt. No. 85, Ex. AAA.)[8] Plaintiff goes on to say that if his counsel returned with a court order requiring inspection of his laptop he "will either not provide the devices or [he] will move all non-sensitive files to a CD and wipe the drive." (*Id.*) At the conclusion of the e-mail he jokes that "an electrical surge just fried my computer and a 50 pound anvil fell over and landed on it" and asks "what penalties [he would] suffer from a contempt of court citation." (*Id.*) This Court granted the computer inspection after Defendant acquired e-mails from third parties that Plaintiff had not turned over in response to discovery requests indicating that documents existed in Plaintiff's possession which he was withholding. Indeed, at some point in time, Plaintiff's Dell laptop contained documents critically

---

[8] The Court determined that the crime/fraud exception to the attorney-client privilege applied to this May 30, 2012 e-mail chain between Plaintiff and his counsel. (Dkt. No. 84.)

relevant to the instant litigation, as evidenced by his searches of the laptop for documents his counsel needed and in response to Defendant's requests for discovery. (Bertram Decl., Ex. E, Pl. Dep. at 354:22-355:5; 356:13-19).

On June 12, 2012, the Court clarified its June 1, 2012 order for the parties stating that Mr. Taylor's computer was subject to inspection pursuant to Federal Rule of Civil Procedure 34. (Dkt. No. 51, June 12 Hr'g Tr. at 30:3-16.) On June 14, 2012, Defendant's forensics firm, Vestigant, LLC ("Vestigant") conducted a keyword search of Plaintiff's computer, but Plaintiff refused to have his computer imaged. (Hr'g Tr. at 5:20-7:4.)

Vestigant investigated Plaintiff's hard drive using EnCase, Xways, Net Analysis, and Intella. (Racich Decl. ¶ 9; Hr'g Tr. at 7:10-13.) The investigation of Plaintiff's hard drive revealed a considerable amount of evidence of Plaintiff's spoliation activity. For instance, on June 4, 2012, three days after this Court's original order for a computer inspection, and the day that Plaintiff learned of the Court's order, Plaintiff downloaded "Evidence Eliminator" software on his Dell laptop.[9] (Racich Decl. ¶ 10; Hr'g Tr. at 93:7-13.) Evidence Eliminator's website, http://www-evidence-eliminator.com, describes the software as "the world's premier computer hard drive cleansing system" that "deep cleans your computer of 'sensitive material', leaving you with a clean PC, a clean conscience and instant peace of mind." (Dkt. No. 56 at 9.) Furthermore, Evidence Eliminator "eliminates all evidence from your PC and has proven to defeat forensic software that cost a lot more than Evidence Eliminator." Evidence Eliminator Home Page, http://www-evidence-eliminator.com.

On June 4, 2012, before downloading Evidence Eliminator, Plaintiff extensively researched the Internet for information about Evidence Eliminator. (Racich Decl., Ex. C.) At

---

[9] In responding to whether he downloaded Evidence Eliminator "the very same day that [he] found out about the Court's order requiring [him] to submit [his] computer for inspection," Plaintiff responded, "Yes, ma'am, [the court order] made me greatly upset." (Hr'g Tr. at 93:10-13.)

2:44 p.m., Plaintiff viewed the ehow.com article "A List of Evidence Eliminators" and the ehow.com article "How Can I Tell if Evidence Eliminator Is Installed on My Computer?"[10] (*Id.*) At 2:46 p.m., Plaintiff viewed http://evidenceeliminator.org, which offers a free version of the Evidence Eliminator software for download. (*Id.*) At 2:48 p.m., Plaintiff viewed Evidence Eliminator's website, including the website's support, downloads, options, and process pages. (*Id.*) Plaintiff then paid $74.95 and downloaded the full version of Evidence Eliminator, which was confirmed by an e-mail sent to Plaintiff at 2:52 p.m. on the same day. (Decl. Kevin Cantwell ("Cantwell Decl."), Ex. B; Hr'g Tr. at 10:14-25.)

Evidence Eliminator was run on Plaintiff's laptop at least one time and possibly three times. (Hr'g Tr. at 15:16-19.) Plaintiff admitted to running Evidence Eliminator at least once on June 4. (*Id.* at 93:14-16.) Files deleted by Evidence Eliminator cannot be recovered, and a forensic analysis cannot determine how many files were deleted by the user through the software. (*Id.* at 15:20-16:5 ("Q: So there could have been 25 files deleted or 10,000 files deleted? A: Exactly.")) Thus, it is impossible to determine how many files Plaintiff deleted and the relevancy of those files to this litigation.

Plaintiff also failed to disable CCleaner during the pendency of the litigation. For instance, on both July 13, 2012 at 8:22 p.m. and July 14, 2012 at 12:01 a.m. CCleaner ran on Plaintiff's laptop, erasing temporary internet files and other documents. (Racich Decl. ¶ 14.) Plaintiff also used "Private Browsing" when searching the Internet, an option that directs a user's computer to immediately delete information downloaded on the user's computer from the viewed

---

[10] Charles Pearson, A List of Evidence Eliminators, eHow, http://www.ehow.com/about_5802392_list-evidence-eliminators.html ("Evidence Eliminator is a program designed to destroy data so that the data cannot be retrieved by forensic methods. . . . The program notifies users before deleting large numbers of files so that no important files are deleted. The program also has a special feature called magnetic resonance that alters files in such a way that they cannot be recovered using electron microscopes."); Stephanie Ellen, How Can I Tell if Evidence Eliminator Is Installed on My Computer?, eHow, http://www.ehow.com/how_8094597_can-evidence-eliminator-installed-computer.html.

URL site. (*Id.* ¶ 17.) Nonetheless, Vestigant was able to determine the number of files that were deleted by CCleaner because CCleaner's file overwriting "replace[s] the letters in the file name and extension with a capital letter Z. So everything appears in Zs." (Hr'g Tr. at 22:3-7). According to Vestigant, "more than 16,000 files and folders had been deleted using the CCleaner tool." (Racich Decl. ¶ 14.) Approximately 10,000 of the deleted files were Internet history-related files, including Plaintiff's and his wife's Internet history, but "more than 6,000 files do not contain sufficient information to allow [Vestigant] to determine where the original file existed." (Hr'g Tr. at 22:8-14.) Defendant has no way of recovering all 16,000 files that were removed. (Dkt. No. 56 at 12.)

### III.  <u>LEGAL STANDARD</u>

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* at 591. That is, a party that anticipates litigation is "under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 543 (E.D. Va. 2006), *vacated on other grounds*, 523 F.3d 1374 (Fed. Cir. 2008).

"[S]poliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995)). "When a party destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation such that the judicial process is disrupted," a district court may use its inherent power to control the judicial process to determine an appropriate sanction to the extent necessary to redress conduct which disrupts the judicial process. *King v. Am. Power Conversion Corp.*, 181 Fed. App'x 373, 376 (4th Cir. 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Such sanctions may include, *inter alia*, dismissal or judgment by default, preclusion of evidence, an adverse inference instruction, a monetary fine, and/or an assessment of attorney's fees and costs. A district court enjoys broad discretion in selecting the appropriate sanction, which should serve the purpose of both "leveling the evidentiary playing field and . . . sanctioning the improper conduct." *Silvestri*, 271 F.3d at 590 (quoting *Vodusek*, 71 F.3d at 156).

Surely, dismissal is the harshest sanction for spoliation, and "is usually justified only in circumstances of bad faith or other 'like action.'" *Silvestri*, 271 F.3d at 593 (quoting *Cole v. Keller Industries, Inc.*, 132 F.3d 1044, 1047 (4th Cir. 1998). "But even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case." *Silvestri*, 271 F.3d at 593. The Fourth Circuit has instructed that,

> to justify the harsh sanction of dismissal, the district court must consider both
> the spoliator's conduct and the prejudice caused and be able to conclude either
> (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of

his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Silvestri*, 271 F.3d at 593.

## IV.     DISCUSSION

Following the two-step process outlined in *Silvestri*, the undersigned Magistrate Judge finds that spoliation did occur and that "the spoliator's conduct was so egregious as to amount to a forfeiture of his claim." *Silvestri*, 271 F.3d at 593. Even if the Court characterized the spoliation as "negligent" as Plaintiff suggests, Defendant has been sufficiently prejudiced and the judicial process sufficiently corrupted to warrant dismissal of this action.

### A. Plaintiff's Egregious Spoliation Conduct

The undersigned finds that Plaintiff had "a duty to preserve material evidence" since November of 2009 when he retained TELG. *See Silvestri*, 271 F.3d at 591. Thus, even prior to the filing of this case, Plaintiff was under a duty to preserve evidence since he anticipated litigation against Defendant.

When Plaintiff retained TELG in November of 2009 he anticipated litigation as evidenced not only by his representation agreement, but also his frustrations at the hearing that TELG never signed a document directed to Defendant while representing him. (Hr'g Tr. at 102:10-103:8.) Plaintiff testified that there was "a gap" between his representation by TELG and current counsel which removed his anticipation of litigation prior to filing the lawsuit; however, Plaintiff's e-mails show this assertion to be patently false. On August 29, 2010, Plaintiff e-mailed TELG saying "We will shortly sever our legal relationship, but my fight will go on through the EEOC, OCCFP, and VA to try to hold my employer accountable" and that "Doing nothing, for me is not an option." (Hr'g Tr. 159:23-160:20; Hr'g Defense Ex. 17.) These statements clearly evidence Plaintiff's continued commitment to take legal action against

Defendant. An e-mail between Plaintiff and his daughter demonstrates that Plaintiff met with current counsel on September 13, 2010. (3d Synder Decl. ¶ 10, Ex. A.) There were only two weeks between Plaintiff's e-mail to TELG vowing to continue his "fight" and his meeting with "the new attorney . . . Mr. Stephen Kahn." (*Id.*) Therefore, the undersigned finds no "gap" between his representation by TELG and Mr. Kahn sufficient to remove his duty to preserve documents in anticipation of litigation.

The undersigned also points out that the duty to preserve relevant evidence extends to privileged documents since privileges can be waived intentionally or inadvertently, as happened in this case. Thus, even if Plaintiff held the mistaken belief that a document was privileged, he still had a duty to keep that file rather than deleting it.

All spoliation occurred from 2011[11] to the present during a time when Plaintiff had a duty to preserve evidence. There are three primary spoliation activities committed by Plaintiff: destruction of the HP Desktop, use of Evidence Eliminator, and use of CCleaner. Each will be addressed in turn.

### i. Destruction of the HP Desktop

Since the duty to preserve material evidence arose prior to the filing of the lawsuit, the undersigned Magistrate Judge concludes that Plaintiff's destruction of his HP Desktop and failure to back up the desktop or provide a complete back up of the desktop amounts to spoliation.

Plaintiff willfully spoliated evidence when he destroyed his 2011 desktop computer and any backups to that computer. Plaintiff does not dispute that in 2011 he took a sledge hammer, or hammer, to his desktop computer and then put it in the landfill. (Hr'g Tr. at 84:14-21.)

---

[11] The only spoliation occurring prior to the filing of the lawsuit is the destruction of the HP desktop. Because the undersigned finds that the duty to preserve evidence arose in 2009 it is immaterial whether the HP desktop "died"/was destroyed in 2010 or 2011.

Plaintiff reasonably should have known the HP desktop contained information related to his claims since he had the computer for many years prior to its destruction in 2011 and most importantly, he admitted that he used the computer for work purposes. (*Id.* at 67:18-24.) Contrary to Plaintiff's representation, this case differs from *E.I. DuPont de Nemours v. Kolon Industries, Inc.*, where the court found Dupont's duty to preserve relevant information did not extend to the four former *Dupont* employees because they could not reasonably have been seen to be key players, because Plaintiff anticipated litigation with Defendant over his work conditions, his time away from work, and potentially work product. 803 F. Supp. 2d 469 (E.D. Va. 2011). Moreover, Plaintiff signed a document that told him he "<u>must</u> preserve all paper and electronic documents, e-mail, and computer files related to his claim" in 2009, well before destruction of the desktop. (Bertram Decl., Ex. A, TELG Mem. Signed by Pl.) According to Plaintiff, the only items recovered from the HP desktop were related to his wife's medical case and disability forms. (Hr'g Tr. at 76:1-10.) Therefore, it is clear that Plaintiff did not preserve all relevant documents from the desktop. Even if the computer had "died" as Plaintiff claims, which is unlikely since his wife's documents were saved, he should have preserved it pursuant to TELG's guidelines rather than destroying it with a hammer and dumping it in a landfill.

The undersigned Magistrate Judge concludes that Plaintiff spoliated evidence and certainly failed to preserve relevant evidence when he physically destroyed his HP desktop in 2011.

### ii. Evidence Eliminator

Plaintiff installed Evidence Eliminator on his laptop computer three days after this Court's order that he submit to a computer inspection. Plaintiff unconvincingly claimed that he downloaded the software at night in the midst of a panic attack he suffered after learning of the

Court-ordered inspection. (Dkt. No. 64, Pl. Decl. ¶ 4.) However, Vestigant's investigation of Plaintiff's laptop shows that the purchase price for the lifetime license for Evidence Eliminator was paid at 2:46 p.m. not in the middle of the night. (Racich Decl., Ex. C.) Plaintiff even testified at the hearing that he downloaded Evidence Eliminator because he was "greatly upset" by the Court's order. (Hr'g Tr. 93:10-13.) Moreover, Plaintiff decided to download Evidence Eliminator only after thorough Internet research of the software, including a comparison of Evidence Eliminator to other evidence destroying programs. (*See* Racich Decl., Ex. C.)

Mr. Cantwell, of Vestigant, testified that if Plaintiff had not run Evidence Eliminator, "it would be very easy to detect" the software because Evidence Eliminator would be located in the program files. (Hr'g Tr. at 44:4-11.) However, Evidence Eliminator was not listed in the program files of Plaintiff's laptop demonstrating that Plaintiff did run the program. (*Id.* at 45:4-5.) Plaintiff admits this. (*Id.* at 93:14-16 ("Q: And you actually ran Evidence Eliminator at least once on that date. Isn't that Right? A: I ran it. That is correct.")) Once Evidence Eliminator was run on Plaintiff's laptop, there is no possible way to tell what has been deleted—any deleted files are irretrievable and undetectable. (*Id.* at 44:14-20.)

This Court cannot, and will not, tolerate the use of such a program by a plaintiff in litigation—in the middle of the discovery—who had knowledge that his computer was about to be searched pursuant to a Court order. The undersigned Magistrate Judge concludes that downloading and running of Evidence Eliminator just days after finding out about the Court-ordered computer inspection constituted willful spoliation of evidence.

### iii. CCleaner

Plaintiff claims he did not manually run CCleaner, but rather, probably set it to "run around midnight." (Bertram Decl., Ex. E, Pl. Dep. at 322:16-323:11.) However, CCleaner ran

13

not only at 12:01 a.m. the day of the keyword search of his computer, but also at 8:22 p.m. the night before. (Hr'g Tr. at 48:22-49:4.) Moreover, Plaintiff's computer expert testified that he was not aware of any way that CCleaner could be set for a fixed schedule such as to run around midnight each night. (*Id.* at 175:22-176:2.) Although, Plaintiff's counsel suggested that the 8:22 p.m. running of CCleaner resulted from the laptop being restarted, Vestigant's investigation of Plaintiff's laptop shows that is highly unlikely. Had CCleaner been set to run automatically every time the laptop started, there would have been no temporary internet files after the automatic running of CCleaner. (Cantwell Decl. ¶ 16.) But the day of the examination, there were still temporary internet files on Plaintiff's computer, rebutting any suggestion that CCleaner ran at 8:22 p.m. automatically upon restarting the laptop. (*Id.*) The undersigned finds Plaintiff's explanations highly improbable considering neither justification explains the program being run twice in one evening, at 8:22 p.m. and 12:01 a.m.

Vestigant's inspection shows, at a minimum, 16,000 files were deleted through the manual running of CCleaner. (Racich Decl. ¶ 14.) For more than 6,000 of those files there is no way to tell what type of file was deleted. (Hr'g Tr. at 22:8-14.) The undersigned finds Plaintiff's manual running of CCleaner hours before the inspection of his laptop and the deletion of at least 16,000 files constituted willful spoliation.

## B. **Prejudicial Effect on Defendant**

Plaintiff claims that the lost data consisted primarily of e-mail exchanges with mental health care providers, former lawyers, and the EEOC, and therefore, there was no prejudice to Defendant because the deleted e-mails were not conversations with Defendant. However, the Court cannot know whether the deleted data represents the best possible defense to Plaintiff's claims or is immaterial. At a minimum, 16,000 files were deleted as a result of the use of

CCleaner, and by using Evidence Eliminator, there is no trace of how many files were deleted. There could be no files or there could be hundreds of thousands of files; there is simply no way to tell.

A primary failure in this case is Plaintiff's misconception that he alone determines what is relevant to the case, including what would be relevant to Defendant's case. When asked why he hasn't searched the free Dell back up of his laptop for documents that may have been deleted, he responded that he didn't need to search for the deleted documents because "[he] know[s] all of the documents that are related to [the] case, and [he] keep[s] them in one place." (Hr'g Tr. at 134:14-15.) Plaintiff has determined what is and is not relevant and/or releasable during the discovery process and thus, what should be saved or not without consulting counsel—making the decision himself. (*Id.* at 117:15-22.) Plaintiff would ask counsel whether to turn over a document if he was unsure of its relevance. (*Id.* at 154:15-23.) But, when the undersigned asked whether Plaintiff would check with counsel when "in [his] mind he had no question," he responded, "No sir, I would not" despite his letter with TELG telling him to save all information related to his claims. (*Id.* at 154:20-155:11.) In addition, the undersigned specifically asked Plaintiff "if you looked at the documents and you believed that they were either privileged or not relevant, you did not turn them over?" (*Id.* at 154:7-9.) Plaintiff responded, "That is correct." (*Id.* at 154:10.)

One such example is Plaintiff's e-mails with TELG which he sorted into folders labeled "Releasable" or "Questionable." (*Id.* at 106:21-22; 107:7-9.) Plaintiff was under the mistaken belief that if Defendant could get e-mails from another party (i.e. TELG) then Plaintiff did not have to provide them. (*Id.* at 118:12.) Plaintiff decided this without talking to his lawyer and when the undersigned asked why, Plaintiff explained it as "bad judgment" on his part. (*Id.* at

118:12-23.) Plaintiff claimed that TELG turned over all e-mails between them, and he has not separately turned over any communications between him and TELG. (Bertram Decl. ¶ 46, Exs. EE-FF.) But, the search of Plaintiff's computer showed over two hundred and fifty e-mails with TELG on his laptop and only one hundred and thirty-three e-mail files were produced by TELG. (3d Snyder Decl. ¶ 11.)

This is even more troubling when paired with the deposition of his therapist, Dr. Ray H. Gustavson ("Gustavson"), who at first kept only Plaintiff's e-mails "that [he] thought were relevant, and then [he] stopped because [Plaintiff] just, [he] think[s] liked to send [him] e-mails . . . [He] soon realized [he] would need a vault to keep all the correspondence." (Def.'s Ex. JJ, Gustavson Dep. At 55:15-56:6.) This testimony clearly implies there were numerous e-mails between Gustavson and Plaintiff. Gustavson provided only six e-mail communications with Plaintiff, and Plaintiff provided only fifty-three communications in response to Defendant's subpoenas. But, Vestigant's investigation of Plaintiff's laptop retrieved an additional thirty-one e-mails with Gustavson that Plaintiff had deleted, one dated as recently as March 21, 2012. (Dkt. No. 56, Ex. II.) This shows that at a minimum Plaintiff deleted thirty-one potentially relevant e-mails, but as a result of the use of Evidence Eliminator it is impossible to know what else could be missing since Gustavson admittedly did not keep all of the correspondence. Plaintiff admitted deleting the retrieved e-mail communications after knowing of the requirement to turn over all e-mails with Gustavson saying, "Most of the ones I recall deleting have to do with making, counseling, or moving appointments . . . . It was only on a few occasions that I unfortunately ranted or said things I probably should not have put in the e-mail to him." (Hr'g Tr. at 124:7-12.)

The Court can have no confidence in what was retained or what was not retained by Plaintiff. Thus, the undersigned finds that Plaintiff has unduly prejudiced Defendant through his spoliation of evidence.

## V.     REQUESTED RELIEF

After concluding that willful, egregious spoliation has occurred, this Court must decide which sanctions are appropriate. The undersigned declines to sanction Plaintiff for perjury at this time, but also warns Plaintiff that, pursuant to 18 U.S.C. § 1623(a), it was an option available to the Court.[12] As noted above, Defendant requests the Court to sanction Plaintiff by dismissing his claims, awarding attorney's fees and costs to Defendant, as well as imposing additional monetary sanctions. In addition to addressing each of these sanctions, less drastic sanctions will also be discussed.

### A. Dismissal

Pursuant to the analysis set out by the Fourth Circuit in *Silvestri* for determining whether dismissal is appropriate, the undersigned finds that, not only was Plaintiff's conduct so egregious as to amount to a forfeiture of his claim, but also that the effect of his spoliation of evidence was prejudicial to Defendant and to the just resolution of this case. Therefore, dismissal is warranted. Although characterized as the harshest sanction available, dismissal is not an uncommon

---

[12] A couple of examples of Plaintiff's problematic testimony include the following: When Plaintiff was asked during his deposition about what data-wiping and cleaning software he had installed on his computer, he completely omitted that he had purchased, installed, and ran Evidence Eliminator on his computer, (Hr'g Tr. at 92:11-93:2); Plaintiff also testified at the evidentiary hearing that "when [he] terminated [his] relationship with The Employment Law Group, [he] had no intent of ever pursuing claims against MITRE," even though he met with current counsel less than two weeks after sending TELG the e-mail saying his fight would go on and ending his representation with TELG (Hr'g Tr. at 156:21-25).

sanction imposed by courts to remedy spoliation caused by a party deleting files from its computer system.[13]

In addition to Plaintiff's physical destruction of his HP desktop and use of CCleaner and Evidence Eliminator to delete files, Plaintiff's conduct demonstrates the intentional nature of these acts. Plaintiff told counsel he would "wipe the drive" if ordered by the Court to submit to a computer inspection and inquired as to the penalties for contempt of court. (Dkt. No. 85, Ex. AAA.) Plaintiff's e-mail and physical destruction of evidence demonstrates blatant disregard for the judicial process.

In *Silvestri*, the Fourth Circuit emphasized that "'because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions-all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition.'" *Silvestri*, 271 F.3d at 590 (quoting *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 457 (4th Cir. 1993)). To preserve the integrity of the judicial process and maintain confidence in the process, it is indispensable that the parties present the fact finder with truthful, accurate, and relevant facts. As a result of Plaintiff's intentional spoliation of relevant evidence, it would be impossible for this Court to ensure that the most relevant facts were being presented and for Defendant to be sure they were presenting their strongest defense. In fact, it would be impossible for this Court

---

[13] *See, e.g., Gutman v. Klien*, 2008 WL 4682208, *12 (E.D.N.Y. Oct. 15, 2008) (finding that use of hard drive wiping program "irretrievably deleted computer files that likely contained important discovery information" and may have deprived the aggrieved party of "crucial evidence" sufficient to warrant a default judgment and attorney's fees and costs); *Ameriwood Indus., Inc. v. Liberman*, 2007 WL 5110313, *1 (E.D. Mo. July, 3, 2007) (entering default judgment and awarding fees and costs because defendant's intentional use of "Window Washer" scrubbing software "evidence a serious disregard for the judicial process and prejudice plaintiff"); *Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006) (awarding fees and costs and proposing an order of default judgment against defendant who willfully destroyed evidence by installing data-wiping software); *Communications Center, Inc. v. Hewitt* , 2005 WL 3277983, *2 (E.D. Cal. April 5, 2005) (recommending entry of default against defendant for use of Evidence Eliminator software while under a court order to undergo computer imaging finding it showed a "stark affront to the judicial process").

to conclude that the trier of fact were being presented the truth. Under such circumstances, the undersigned Magistrate Judge recommends dismissal of Plaintiff's claims with prejudice as the sole manner in which to prevent an erroneous judgment.

### B. Attorney's Fees and Costs

Plaintiff also seeks attorney's fees and costs "incurred in connection with discovery of this case, this motion, Vestigant's forensic analysis, and Plaintiff's discovery misconduct." (Dkt. No. 56 at 26). Generally, the "American" rule "requires each party to bear its own litigation costs, including attorney's fees." *United Food & Comm. Workers v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989). However, the undersigned finds this monetary sanction appropriate for Plaintiff's egregious spoliation of relevant evidence. The undersigned recommends Plaintiff be ordered to pay reasonable attorney's fees and costs incurred as a result of the spoliation.

### C. Monetary Sanctions

In addition to requesting terminating sanctions and attorney's fees and costs, Defendant requests a punitive monetary sanction against Plaintiff. As described above, dismissal is a severe sanction and "the ultimate sanction for spoliation." *Silvestri*, 271 F.3d at 592. The undersigned does not find any persuasive justification for further monetary sanctions in addition to dismissal of the case and awarding reasonable attorney's fees and costs. Dismissal of a party's case is the ultimate sanction and, in conjunction with awarding reasonable attorney's fees and costs, serves as sufficient deterrent not only for the Plaintiff, but for others who would consider thwarting the effective administration of justice.

### D. Lesser Sanctions

Despite Plaintiff's suggestion that a jury instruction could remedy the "negligent" spoliation in this case, the undersigned finds any lesser sanction wholly inadequate. (Dkt. No. 90

at 6.) Plaintiff does not suggest any adequate jury instructions,[14] and the undersigned cannot imagine a jury instruction that would effectively protect Defendant from the prejudice created in this case. And, there is no jury instruction that could adequately deter conduct the undersigned has concluded amounted to an affront to the integrity of the judicial process. As noted above, the evidence necessary to justly try this case has been irretrievably deleted by Plaintiff, and there is no way for this Court to be assured that the information being presented to the fact finder is the most relevant information. As the Fourth Circuit underscored in *Silvestri*, "[t]he courts must protect the integrity of the judicial process, because '[a]s soon as the process falters . . . the people are then justified in abandoning support for the system.'" *Silvestri*, 271 F.3d at 590 (quoting *Shaffer Equipment*, 11 F.3d at 457). There is no lesser sanction that can ensure the integrity of the judicial process in this case.

## VI.   RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Defendant's Motion for Sanctions be granted in part and denied in part, and that an Order be entered dismissing Plaintiff's claims with prejudice and awarding reasonable attorney's fees and costs to Defendant.

## VII.   NOTICE

**By mailing copies of this report and recommendation, the parties are notified as follows. Objections to this report and recommendation must, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this**

---

[14] Plaintiff states it "will request an explicit instruction that the jury not award damages for emotional distress attributable to sources other than his treatment by MITRE." (Dkt. No. 90 at 6.) This suggested jury instruction does not begin to cover the loss of documents in this case. Despite Plaintiff's assertion that most of the e-mails were with health care providers, former lawyers, and the EEOC, the Court has no way of determining which relevant documents were deleted.

**report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record.

_/s/_

Ivan D. Davis
United States Magistrate Judge

September 10, 2012
Alexandria, Virginia