# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| ALAN S. TAYLOR,<br><br>Plaintiff,<br><br>-v-<br><br>THE MITRE CORPORATION,<br><br>Defendant. | Civil Action No. 1:11-cv-1247 |

## MEMORANDUM OPINION

Before the Court is defendant Mitre Corporation's motion for attorney fees and costs, which Mitre filed following this Court's dismissal of plaintiff Mr. Taylor's claims due to spoliation of evidence. Both sides have briefed the issue extensively. The Court has reviewed all submissions, and now issues this opinion and accompanying order granting Mitre's motion for fees and costs, but in an amount lower than requested.

## Background

This Court entered an order dismissing Mr. Taylor's Family Medical Leave Act and Americans with Disabilities Act claims against his former employer, The Mitre Corporation, on November 8, 2012. The dismissal was a sanction for egregious spoliation of evidence by Mr. Taylor.

Mitre alleged that Mr. Taylor spoiled certain evidence by smashing a work computer with a sledge hammer in 2011. The Court considered that allegation in its analysis, but was most convinced by Mr. Taylor's reaction to a July 2012 order by the Magistrate Judge requiring Mr. Taylor to produce his laptop computer for inspection. Immediately following that order, Mr.

1

Taylor ran specialized programs—Evidence Eliminator and CCleaner—on his computer for the clear purpose of deleting information before he was forced to surrender the laptop.

Because of the egregious nature of his conduct, the Court found that dismissal was appropriate, and also that Mr. Taylor should be responsible for Mitre's reasonable fees and costs associated with the motion for sanctions. The lead attorney for Mitre, Connie Bertram, has submitted an affidavit (Dkt. No. 104, Ex. 1) claiming fees in the amount of $378,480.00 and swearing that costs in the amount of $49,245.94 were necessary and reasonable, in accordance with 28 U.S.C. § 1924.

## Analysis

**Costs**

Mitre claims costs related to deposition recording, transcripts, witness fees, image processing performed by Modus, and forensic analysis of Mr. Taylor's computer performed by Vestigant. We now consider each category in turn.[1]

Mitre's request to tax the cost of transcripts of hearings and depositions is proper, with a few exceptions. Extra copies of the July 27 hearing transcript are not authorized (only the first copy of each transcript is taxable), nor is daily delivery for the transcript of Mr. Taylor's deposition because the Court finds that service was not necessary. *See U.S. ex rel. Davis v. U.S. Training Center, Inc.*, 829 F. Supp. 2d 329, 332 (E.D. Va. 2011). Additionally, it is not the practice of courts in this district to tax the costs of videotaped depositions. *See* Taxation of Costs Guidelines, published at

---

[1] Mr. Taylor argues in his brief against the taxation of costs related to Drs. Blumberg and Shostak. His analysis regarding expert testimony is supported by the case law (Mitre's citation in response only pertains to travel expenses and incidentals), but it is unnecessary because the costs sworn to by Attorney Bertram do not include expenses related to the use of either doctor.

2

http://www.vaed.uscourts.gov/formsandfees/documents/TaxationofCostsGuidelines1-28-11.pdf (hereinafter "Taxation Guidelines"). Therefore, $346.50 will be subtracted from Mitre's requested cost total to offset the additional transcript copies (incurred on July 30, 2012), $640.50 will be subtracted to offset the daily delivery charge (incurred on June 29, 2012), and $1,087.50 will be subtracted to offset the videography charges (incurred on June 29, 2012). In sum, $2,074.50 will be subtracted from Mitre's requested transcript and deposition costs.

Mitre has requested a total of $5,453.96 in image processing costs from Modus. There is scant case law on the issue of image processing, but the Taxation Guidelines limit taxation of costs of "maps, charts and photographs" to those that are admitted into evidence. Mitre offers no explanation of what these image processing services entailed (for example, what does it mean to "blow back TIFF images," why does it cost $686.00, and why did it need to be performed twice?), but Mitre makes no claim that the resulting images were ever admitted into evidence. The Court will subtract all $5,453.96 of Mitre's image processing costs from Mitre's requested amount. If Mitre wishes, it may file an additional motion explaining the image processing fees and requesting that they be taxed as costs.

Finally, Mitre requests taxation of $32,550.19 in costs that it paid to Vestigant to perform forensic analysis on Mr. Taylor's laptop computer. The Court gives Mitre the benefit of the doubt here, because Mr. Taylor's intentional destruction of evidence no doubt made forensic analysis of his computer more time consuming and expensive. That said, the Taxation Guidelines do not entitle Mitre to expert witness fees beyond the $40 per day, plus travel and incidentals, afforded to lay witnesses. Therefore, Mitre is awarded the costs associated with Vestigant's work because it was necessary as a result of the spoliation, with the exception of $3,200.00 that Vestigant charged for "testimony preparation" and "expert testimony" on July 12 and 13, 2012.

Taking the above deductions from the $49,245.94 of requested costs, the Court awards $38,517.48 in costs to Mitre, to be paid by Mr. Taylor.

**Fees**

In calculating a fee award, a court first sets a lodestar figure by multiplying the reasonable hours expended and multiplying that figure by a reasonable hourly rate. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In order to determine what is reasonable for both hours and rate, the Fourth Circuit has adopted a twelve factor test. *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978). In setting the lodestar amount, courts consider:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* The twelve factors are typically applied when plaintiffs prevail and seek fees, but they are instructive in this context as well.

Mitre's attorneys have submitted a bill for the work they claim to have done "as a result of" Mr. Taylor's spoliation. The bill is for 649.2 hours of attorney time and 245.4

4

hours of paralegal time, for a grand total of $378,480.00 in fees. The rates Mitre requests for its attorneys range from $695/hour for its lead attorney Connie Bertram to $355/hour for the work of Ms. Emilie Adams, the most junior associate assigned to the matter.

The first three of the twelve factors can be considered together in this case. The facts surrounding Mr. Taylor's spoliation were certainly unique, but the legal issues the situation presented were neither novel nor difficult. Specialized skills were required to discover and document the spoliation, and to recover some of the spoilt data, but that is technical work that was performed by Vestigant. The spoliation issue was, however, contentious and much ink was spilled by both sides over what, if any, sanctions should result from Mr. Taylor's conduct. Attorneys as qualified and experienced in the employment law field as Ms. Bertram and her associates were no doubt able to perform the work efficiently. The Court also takes note that, by the attorneys' own admission, the submitted bill includes time spent on a number of issues that would have been necessary in this case, even absent any spoliation. The Court finds that a reasonable amount of time for the attorneys to expend on the work created by Mr. Taylor's spoliation is 487 hours, 75 percent of the time submitted in Mitre's bill.

The Court must also determine what would be a reasonable rate to charge for the work performed. Because Mitre's lawyers were not working on a contingent fee, numbers four, six, and ten from the list above are of limited relevance. But the Court can and will consider the customary fee for like work, and the reputation and skill level of the attorneys. After reviewing the declarations of Ms. Bertram, Mr. Trevor J. Chaplick, and Mr. Thomas P. Murphy—all on the subject of reasonable fees for these types of services—the Court finds that a rate of $450.00 per hour is appropriate for Mitre's lead

5

attorney. The Court notes that the Laffey Matrix is not "a reliable indicator of the hourly rates of litigation attorneys in [Alexandria] Virginia, a suburb of Washington, D.C." *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 245 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008)). The *Robinson* court overturned hourly rates of $425, which had been approved by the district court. *Id.* at 245. This Court's approval of $450 per hour rates in this case is a reflection of Ms. Bertram's skill and considerable experience in the area of employment law. In other words, Ms. Bertram's billing rate will be adjusted by multiplying her billed rate of $695 by (roughly) 0.65.

The Court will set the billing rates for the other attorneys that worked on this matter for Miter by also multiplying their submitted rates by 0.65. It will assume that each lawyer contributed to the 110 hours of total work in the same proportions indicated on the submitted bill. These adjustments yield the following table:

| Attorney | Billed Rate | Adjusted Rate | Billed Hours | Adjusted Hours | Adjusted Rate x Adjusted Hours |
| --- | --- | --- | --- | --- | --- |
| Connie Bertram | 695.00 | 450.00 | 158.2 | 118.65 | $53,415.00 |
| Guy Brenner | 575.00 | 373.75 | 10.4 | 7.8 | $2,915.25 |
| Joshua Siegel | 555.00 | 360.75 | 23.5 | 17.6 | $6,349.20 |
| Meredith Snyder | 490.00 | 318.50 | 337.6 | 253.2 | $80,644.20 |
| Emilie Adams | 355.00 | 230.75 | 90.9 | 68.2 | $15,737.15 |
| Andrew Turnbull | 345.00 | 224.25 | 28.6 | 21.5 | $4,821.38 |
| **TOTALS** | | | | 487 | $163,882.18 |

With regards to paralegal time, the Court finds that the tasks performed by paralegals in this case ranged from strictly administrative (Erin Combs "assist[ed] with electronically filing [memorandum]" on August 6, 2012) to work that should have been performed by attorneys (Agnieszka Kurzej "cite check[ed] defendant's motion" on August 7, 2012, and "review[ed] emails in plaintiff's PST file" on August 8, 2012). The administrative work should not be billed, and the attorney work should never have been performed by paralegals in the first place. The Court cannot effectively sort out the proper from the improper paralegal work, and so will not award any paralegal fees.

Therefore, the Court awards $163,882.18 in attorney's fees, to be paid to Mitre by Mr. Taylor.

**Adjustment for Mr. Taylor's Financial Situation**

Mr. Taylor argues that any fees or costs awarded against him must be reduced an appropriate amount to account for his financial situation. But the cases he relies on, principally *Arnold v. Burger King Corp.*, deal with plaintiffs who acted in good faith but nevertheless found themselves liable for attorney's fees due to filing an ultimately frivolous lawsuit. 719 F.2d 63 (4th Cir. 1983). Here, the merits of the case were never properly evaluated because of Mr. Taylor's egregious spoliation of evidence. The Court does not find that a reduction in fees is necessary to avoid "chilling" similar litigation in the future, *see id.* at 65, because the fees are not awarded as a result of frivolous filing but rather bad faith conduct by Mr. Taylor during the litigation. The Court hopes imposition

of fees and costs will have the effect of deterring similar conduct by Mr. Taylor and others in the future.

### Conclusion

That Mr. Taylor should be responsible for legal fees and costs incurred as a result of his spoliation is clear. After reviewing the work done by Mitre's attorneys in response to Mr. Taylor's spoliation, the Court finds that the costs and fees as laid out above are appropriate, and now issues the accompanying order granting Mitre's motion and awarding it $202,399.66 in fees and costs, to be paid by Mr. Taylor. The Court also grants leave to Mitre to file an additional motion further explaining its request for image processing costs, should it so desire.

February 13, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge